United States District Court
Southern District of Texas
**ENTERED**
August 15, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:20-CV-03680 |
| A.H.D. HOUSTON, INC. D/B/A CENTERFOLDS, *et al.*, | § § § § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

The Court held a hearing on Plaintiff's Motion for Summary Judgment (doc. 21), Insured Defendants' Motion for Summary Judgment (doc. 32), and Interested Party Defendants' Motion for Summary Judgment (doc. 20) on Thursday, June 2, 2022. At that hearing, the Court took the Motions under advisement. The Court now **GRANTS** Defendants' Motions for Summary Judgment, **DENIES** Plaintiff's Motion for Summary Judgment, and provides this Memorandum & Order to document its rulings and reasoning.

### I.   FACTUAL BACKGROUND

The present matter involves three groups of litigants: (1) plaintiff—The Princeton Excess and Surplus Lines Insurance Company ("PESLIC"); (2) insured defendants who are well known strip clubs ("the Clubs") in the Houston area; and (3) interested party defendants who are sixteen supermodels ("the Models"). The Models sued the Clubs in an underlying state court lawsuit, earning a final judgment of $1.405 million against the Clubs on December 7, 2021. (Doc. 35 at 2).

1

In the underlying lawsuit, PESLIC provided (and continues to provide) a defense to the Clubs under reservation of rights, including the costs of PESLIC's pending appeal to the Texas Court of Appeals. (Doc. 43 at 4). In October 2020, PESLIC filed the present lawsuit against the Clubs, naming the Models as interested party defendants. (Doc. 1). PESLIC now seeks a declaratory judgment that it has no duty to defend or indemnify the Clubs in the underlying lawsuit. (*Id*. at 18).

### A.  The Underlying Lawsuit

On October 23, 2017, the Models filed suit against the Clubs in the 157th Judicial District Court of Harris, County, Texas. The Clubs are Texas-based, sexually-oriented businesses known as Treasures, Centerfolds, and Splendor. (Doc. 1-1 at ¶10). The Clubs serve food and alcohol in a sexually-charged environment where topless women perform for and interact with the businesses' clientele. (*Id*.) The Clubs are well-known in the Harris County area and surrounding community because they advertise regularly via the Internet, social media sites, radio, and billboards. (*Id*.)

#### 1.  The Pleadings

In the state court lawsuits, the Models alleged that the Clubs used unauthorized doctored images of the interested party defendants in their promotional materials for the Clubs. (*Id*.) Said promotional materials were allegedly doctored to make it appear that the Models were strippers working in the Clubs or that they endorsed the Clubs. (*Id*. at 11). Moreover, the Models' images were often photo-shopped into scenes depicting them as being present in the strip clubs, and the new images were subsequently placed in Internet posts, social media posts, and web pages depicting the Models in the clubs or at various events associated with the Clubs, thereby associating the Models with the strip club industry. (*Id*.) The Models were depicted in various

sexually-charged social media and Internet posts, other social media posts, and internet pages encouraging patrons to visit the Clubs. (*Id*. at ¶12).

The Models alleged that the Clubs were involved in the selection of the photos and the creation of the promotional materials in addition to their dissemination via print and electronic media. (*Id*.) Models' images and likenesses ("Images") were repeatedly used to promote the Clubs, and in each instance, the Images were used without the consent of the Models. (*Id*.) Based on these factual allegations, the Models brought claims of (1) invasion of privacy (misappropriation), (2) *respondeat superior* negligence, and (3) theft. (*Id*. at ¶26-33).

**2. The Final Judgment**

When discovery concluded, the facts establishing Misappropriation—Invasion of Privacy were (1) that the Clubs, through Genesis, appropriated the Models' likeness for their value rather than incidentally or for a newsworthy purpose; (2) that the Models were identifiable in the Clubs' publications; and (3) that the Clubs received an advantage or benefit as a result of the publication. (*Id*. at ¶¶10-24).

Discovery also showed that the Clubs had hired a company called Genesis Real World Corporation ("Genesis") "to handle posting of Images and content on [the Clubs'] Facebook and websites." (Doc. 44-6 at ¶¶14-15). Even though Genesis was hired to manage the Clubs' marketing, the Clubs' General Managers directed Genesis regarding the content that was ultimately posted on the sites. (*Id*. at ¶14).

The final facts alleged concerning the Models' *respondeat superior* negligence claims were as follows: the Clubs owed the Models a duty to ensure that the Clubs' advertising and promotional

materials and practices did not infringe on the Models' privacy and publicity rights, and the Clubs breached the duty in two ways: (1) by failing either to adhere to or implement policies and procedures to ensure that Genesis' use of interested party defendants' images was authorized; and (2) failing to confirm that Genesis had no permission to use any of the imagery until after the Clubs were served with the present lawsuit. (Doc. 44-6 at ¶¶25-36).

The Models dropped their initial civil theft claim. (*Id*. at ¶39)

The state court ultimately found that the Models were entitled to summary judgment on both respondeat superior negligence and misappropriation, awarding $1.405 a million in damages—an amount established by unchallenged expert testimony presented by the Models. (Doc. 35-1).

### B.  The Present Lawsuit

The Princeton Excess and Surplus Lines Insurance Company ("PESLIC") is an insurance company that provided general liability insurance policies to the Clubs from November 9, 2015, to November 9, 2017. The '01 Policy laid out the coverage and terms for the 2015-16 coverage period, and the '02 Policy laid out coverage and terms for the 2016-17 coverage period. One of the Models—a woman named Lucy Pinder—claimed that the Clubs had published an unauthorized picture of her on November 26, 2015; therefore, her claim falls under the coverage of the '01 Policy. All the other Models' claims fall under the coverage of the '02 Policy. The two policies have identical coverage provisions, but slightly differing exclusionary provisions.

Under "Personal and Advertising Injury Liability," both Policies provide, in pertinent part, that PESLIC "will pay those sums that the insured becomes legally obligated to pay as damages

because of "personal and advertising injury" to which this insurance applies." (Doc. 43-5 at 5-6; doc. 43-6 at 6).

The Policies both define Personal and Advertising Injury in the following way:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f. The use of another's advertising idea in your "advertisement"; or
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(*Id*., docs 43-5 and 43-6, SECTION V – DEFINITIONS.).

The '01 Policy contains an exclusion called the "Field of Entertainment" exclusion endorsement. The exclusion reads, in relevant part,

> This insurance does not apply to any loss, claim, "suit," cost, expense, or liability for damages, directly or indirectly based on, attributable to, arising out of, involving, resulting from or in any way related to:
>
> a. Actual or alleged activity which is claimed to be an intellectual property infringement or violation of any of the following rights or laws: copyright, patent, trade dress, trade secrets, trade name, trademark or service mark;
> b. Actual or alleged invasion of privacy;
> c. Actual or alleged libel, slander, or any form of defamation;
> d. Actual or alleged unauthorized use of titles, slogans, names, formats, ideas, characters, artwork, theme, plots or other material;
> e. Actual or alleged infringement of copyright or common law rights in literary, artistic or musical material, or actual or alleged infringement of literary, artistic or musical rights codes [. . .].

5

(Doc. 1-3, General Policy Changes Endorsement, section 7). PESLIC contends that the "Field of Entertainment" exclusion cancels out offenses d, e, and g[1] but leaves offense f—"the use of another's advertising idea in your 'advertisement'"—intact.

The '02 Policy contains a Libel, Slander, Disparagement, and Privacy Exclusion that cancels out Personal and Advertising Injury parts (d)-(g)[2] insofar as they pertain to Exhibitions and Related Marketing. (*See* doc. 21 at 16). The exclusion reads as follows:

> This insurance does not apply to: Personal and Advertising Injury Parts d, e, f and g Arising Out Of Exhibitions and Related Marketing.
>
> "Exhibitions and related marketing" means:
>
> (a) The creation, production, publication, performance, exhibition, distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works and similar productions or work in any medium including videos, phonographic recordings, tapes, compact discs, DVDs, memory cards, electronic software or media, books, magazines, social media, webcasts and web sites.
>
> (b) The conduct of individuals in shows, theatrical productions, concerts, sporting events, or any other form of exhibition.
>
> (c) Merchandising, advertising or publicity programs or materials for the operations and materials described in (a) or (b) above.
>
> (Doc. 1-2 at GL 21 96 10 16.).

---

[1] (d) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (e) Oral or written publication, in any manner, of material that violates a person's right of privacy; (g) Infringing upon another's copyright, trade dress or slogan in your "advertisement."

[2] (d) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (e) Oral or written publication, in any manner, of material that violates a person's right of privacy; (f) the use of another's advertising idea in your "advertisement"; (g) Infringing upon another's copyright, trade dress or slogan in your "advertisement."

In October 2020, PESLIC filed the present lawsuit against insured defendants, seeking declaratory judgment that PESLIC has no duty under either of the Policies to defend or indemnify the Clubs for the underlying lawsuit. (Doc. 1) In October and November 2021, parties filed three sets of summary judgment motions regarding PESLIC's duty to defend insured defendants in the underlying lawsuit. (Docs. 20, 21 & 32). On December 7, 2021, when the final summary judgment was entered in the underlying lawsuit in favor of interested party defendants, the issue of PESLIC's duty to indemnify insured defendants was ripe, and the Court granted the parties leave to supplement their motions for summary judgment accordingly.

The Court now addresses all three motions for summary judgment, as well as the supplementary briefing regarding PESLIC's duty to indemnify.

## I.     LEGAL STANDARD

### A. Summary Judgment

In order to prevail on a summary judgment motion, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Archie v. Acceptance Indem. Ins.* Co., 507 F. App'x 451, 452 (5th Cir. 2013). The moving party bears the initial burden of demonstrating that summary judgment is proper. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has made that showing, the burden shifts back to the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Catrett*, 477 U.S. at 324.

## II. DISCUSSION

### A. The '01 Policy – Covering Insured Defendants from November 2015-2016

The only interested party defendant whose claim is affected by the '01 policy is Model Lucy Pinder, who complained that the Clubs posted an image of her on November 26, 2015. (Doc. 43 at 2).

#### 1. Whether PESLIC had a duty to defend insured defendants under the terms of the '01 Policy

When an insured party is sued, an insurer's duty to defend is determined solely by the facts alleged in the petition and the terms of the policy. *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.,* 279 S.W.3d 650, 654 (Tex. 2009). This is known as the eight-corners rule. *Id.* "Resort to evidence outside the four corners of these two documents is generally prohibited." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 307 (Tex. 2006). Moreover, the duty to defend does not rely on the truth or falsity of the underlying allegations; an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy. *Id.* at 308; *see also* 14 COUCH ON INSURANCE § 200:19 ("Even if the allegations are groundless, false, or fraudulent the insurer is obligated to defend."). Because the only two documents relevant to the duty-to-defend inquiry are the insurance policy and the petition, an insurer's duty to defend can be determined at the moment the petition is filed. *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011).

Thus, in many cases an insurer may have a duty to defend but, eventually, no duty to indemnify. *See Griffin*, 955 S.W.2d at 82 ("[A] plaintiff pleading both negligent and intentional conduct may trigger an insurer's duty to defend, but a finding that the insured acted

intentionally and not negligently may negate the insurer's duty to indemnify."). This has led some courts to observe that in Texas the duty to defend is broader than the duty to indemnify, *see, e.g., Zurich Am. Ins. Co. v. Nokia, Inc*., 268 S.W.3d 487, 491 (Tex. 2008); *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.,* 468 F.3d 857, 858 (5th Cir.2006). This is so because an insurer is obligated to defend whenever there is any potential basis for liability under the policy, while the duty to indemnify may never be realized. *See Pine Oak*, 279 S.W.3d at 656 & n. 30; *GuideOne*, 197 S.W.3d at 310. *Colony Ins. Co. v. Peachtree Const., Ltd.,* 647 F.3d 248, 253–54 (5th Cir. 2011).

The Clubs and Models insist that covered offenses (e) and (f) are implicated in this matter. PESLIC does not dispute that offense (e)—"oral or written publication, in any manner, of material that violates a person's right of privacy"—is potentially implicated in this matter (*see* doc. 21 at 8, 11); PESLIC simply insists that the "Field of Entertainment" exclusion excludes offense (e) and eliminates PESLIC's duty to defend. As for offense (f)—"the use of another's advertising idea in your 'advertisement'"—the parties disagree about whether the Clubs' alleged use of the Models' pictures qualifies as "use of another's advertising idea." However, PESLIC concedes that offense (f) is not excluded by the "Field of Entertainment" Exclusion. The Court now examines PESLIC's objections to its duty to defend.

Texas courts construe insurance policies in the same manner as any other contract. *In re Deepwater Horizon*, 470 S.W.3d 452 (Tex. 2015). The objective is to ascertain and give effect to the parties' intent, giving words in the policy their ordinary and generally accepted meaning unless the policy dictates otherwise. The policy is examined as a whole, seeking to harmonize all provisions. If language is unambiguous, it will be construed as a matter of law and enforced as

9

written. *Id*. However, if both parties' constructions present reasonable interpretations of the policy's language, a court must conclude that the specific policy provision in question is ambiguous. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). In that event, a court "must resolve the uncertainty by adopting the construction that most favors the insured" and when construing a limitation on coverage, a court must do so "even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex. 1991). The insured has the burden of establishing coverage under the terms of the policy. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2019).

The Court first examines whether the Models' pleadings in the underlying lawsuit establish coverage under offense (f), which PESLIC concedes is not excluded by its "Field of Entertainment Exclusion." (*See* doc. 21 at 15; doc. 24 at 11). Again, offense (f) is "the use of another's advertising idea in your 'advertisement.'" Defendants point out that the term "advertising idea" is not defined in the policy, so the Court looks to the ordinary and accepted meaning of the term.

Defendants offer the *Merriam-Webster Dictionary* and the *Common Language Marketing Dictionary* which respectively define "advertising idea" as "an advertising idea, concept, or theme [which] serves as the organizing thought for an advertisement" and "a thought, plan, or suggestion about what to do." (Dkt. 25, p. 12). In response, PESLIC offers the Fifth Circuit's definition of "misappropriation of advertising ideas" as "the ... wrongful[ ] tak[ing of] an idea about the solicitation of business." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453 (5th Cir. 2003). PESLIC also points to Everest Indem. Ins. Co. v. Allied Intern. Emergency LLC, CIV 4:08-

CV-678-Y, 2009 WL 2030421 (N.D. Tex. July 14, 2009), where the court defined an "advertising idea" as "[an] idea or concept related to the promotion of a product to the public." The Court finds that both parties' proposed ordinary and accepted meanings of the term "advertising idea" are quite similar and not mutually exclusive. The Court now looks to the allegations in the underlying lawsuit.

All of the images of the models involved in the Underlying Lawsuit are alleged to have been misappropriated and existed prior to the use of the Named Defendants. The Underlying Lawsuit allegations expressly include the following:

> Defendants were involved in the selection of the photos and the creation of the promotional materials in addition to their dissemination via print and electronic media. (Doc. 1-1 at 6, ¶12).
>
> [The models] are all well-known, highly accomplished models. They have been seen in print ads, magazines, and movies. Their careers are built on establishing a brand for themselves in order to promote, endorse, or advertise clients' products and businesses in exchange for compensation. (Doc. 1-1 at 6, ¶13).
>
> The [models] are the owners of their Images and have all rights associated with their Images. (Doc. 1-1 at 8, ¶18).
>
> [The models] are all talented, highly successful models who earn substantial amounts of money by promoting their images and likenesses to various clients and take great pride in their reputation in their industry. (Doc. 1-1 at 8, ¶19).

The Court finds that the Models' pleadings in the underlying lawsuit sufficiently allege that the Clubs used Models' images (i.e., their "advertising ideas") and placed them in their own "advertisements."

Accordingly, the Court finds that PESLIC had the duty under the '01 policy to defend the Clubs against Lucy Pinder's claims.

### 2. Whether PESLIC has a duty to indemnify insured defendants under the '01 Policy

In determining PESLIC's duty to indemnify, the Court looks to the facts establishing liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy. *See Cowan*, 945 S.W.2d at 821; *D.R. Horton*, 300 S.W.3d at 744. The Court must evaluate "whether the evidence in [the underlying case] established liability for damages covered by the insuring agreement," specifically under the "Personal and Advertising Injury Liability," found in both the '01 and '02 Policies. *Great Am. Lloyds Ins. Co. v. Mittlestadt*, 109 S.W.3d 784, 787 (Tex. App.—Fort Worth 2003, no pet.).

As already mentioned, the interested party defendants won the underlying state court lawsuit. On December 7, 2021, the state court granted the interested party defendants' motion for summary judgment, finding Insured Defendants liable for Right to Privacy—Misappropriation, Negligence, and *respondeat superior*. (Doc. 35-1).

Here, where (1) the Court has already found that the Models' pleadings invoked PESLIC's duty to defend for offense (f), "the use of another's advertising idea in your 'advertisement'"; (2) the state court in the underlying lawsuit found that the Models were entitled to summary judgment on all their claims including the claims that established coverage under offense (f); and (3) PESLIC concedes that the "Field of Entertainment" exclusion does not exclude offense (f), the Court now finds that PESLIC has a duty under Policy '01 to indemnify the Clubs for Lucy Pinder's claims.

### B. The '02 Policy – Covering Insured Defendants from November 2016-2017

Models Cora Skinner, Jaime Middleton, Jamillette Gaxiola, Jennifer Zharinova, Jessica Hinton, Lina Posada, Paoloa Canas, Sandra Valencia, Tiffany Toth, Gemma Farrell, Emily Sears, Jaclyn Swedberg, Maysa Quy, Cicelo Gibson, and Elizabeth Turner all complain that the Clubs

12

published unauthorized photos of them between the dates of November 9, 2016 and November 9, 2017. (Doc. 43 at 2-3). Therefore, all of their claims fall under the coverage of the '02 Policy.

### a. Whether PESLIC had a duty to defend defendants under the terms of the '02 policy

"Texas disfavors constructions of insurance contracts that render all coverage illusory." *Northfield Ins. Co. v. Herrera*, 751 F. App'x 512, 518 (5th Cir. 2018). "But when an insurance policy will provide coverage for other claims, Texas courts are unlikely to deem the policy illusory." *Id.*; *see also Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 459 (Tex. 1997). An insurance policy is not illusory merely because it does not provide coverage for a claim the policyholder thought it would cover. *Constitution State Ins. Co. v. Iso-Tex Inc*., 61 F.3d 405, 410 n.4 (5th Cir. 1995) ("Texas law does not recognize coverage because of 'reasonable expectation' of the insured.").

In *Princeton Express v. DM Ventures USA LLC,* 209 F. Supp. 3d 1252, 1260 (S.D. Fla. 2016), the court—in a declaratory judgment action virtually identical to the one before this Court— held that PESLIC'S "Field of Entertainment" exclusion ". . . essentially eliminates all advertising injury coverage. Because the policies provide that they cover advertising injury, and then the Exclusion provides that advertising injury is excluded, the provisions are completely contradicted. The Exclusion does not carve out a particular type of advertising injury . . . but, instead, excludes all advertising injury. Giving effect to the Exclusion would make the advertising injury coverage illusory, which is prohibited by Florida law." [3]

---

[3] In *DM Ventures*, PESLIC did not concede, as it concedes in the present matter, that the "Field of Entertainment" exclusion does not exclude offense (f). So here, where PESLIC retains *some* advertising injury coverage under offense (f), the same "Field of Entertainment" exclusion did not completely nullify all advertising injury coverage under the

PESLIC argues that while its coverage may be illusory under Florida law, it is not so under Texas law. PESLIC writes,

> Regardless of the Florida court reasoning, the application of Texas law to that case would yield an opposite result. In Texas, the construction of the policy as not providing coverage is against public policy only if it "renders *all* coverage illusory." *Northfield Ins. Co. v. Herrera*, 751 Fed. App'x. 512, 518 (5th Cir. 2018) (emphasis in the original). The emphasized "all" means that coverage under the entire policy must be taken away, rather than coverage for a specific insured occurrence or offense. *See Balfour Beatty Constr., LLC v. Liberty Mut. Fire Ins. Co*., 968 F.3d 504, 515 (5th Cir. 2020) ("when an insurance policy will provide coverage for other claims, Texas courts are unlikely to deem the policy illusory").

(Doc. 21 at 15).

PESLIC seems to suggest that, in Texas, so long as an insurance contract provides coverage of some sort, it is not illusory. In such a scenario, an insurance contract that purports to provide both personal injury coverage and advertising injury coverage is not illusory so long as it provides either some personal injury coverage *or* some advertising injury coverage; it need not provide both.

But PESLIC's reading of Texas law on illusory contracts is incorrect, as neither *Balfour* nor *Herrera* are so permissive. *Balfour* held that an exclusion was not illusory where the insurer was able to point to various circumstances under which it would provide coverage for property damage. 968 F.3d at 516 ("[b]ecause the Policy provides coverage under other factual scenarios, the Policy as written is not illusory.") In other words, if there were no factual scenarios under which the *Balfour* insurer would provide coverage for property damage, the policy as written would have been illusory under Texas law. And again, in *Herrera*, the Fifth Circuit found that an insurance policy providing coverage for bodily injury was not illusory because there were factual scenarios under which the policy provided coverage. 751 Fed. App'x at 518 ("Herrera will still be

---

'01 Policy; however, as the Court will explain, the '02 Policy is a different matter.

protected against claims brought by third parties, such as SEC's vendors and visitors to the site. He will also be protected from claims relating to his other job sites. *Therefore*, the policy's coverage is not illusory.") (emphasis added).

As mentioned above, the '01 and '02 policies have identical coverage language, but slightly different exclusionary language. Both policies purport to cover offenses (a)--(g) under "Personal and Advertising Injury" coverage. (Docs 43-5 annd 43-6, SECTION V – DEFINITIONS). Offenses (a)-(c) are the covered personal injury offenses, and offenses (d)-(g) are the covered advertising injury offenses.

But whereas the '01 Policy's exclusion leaves offense (f) intact, in the case of the '02 Policy, PESLIC claims that the "Libel, Slander, Disparagement, and Privacy" Exclusion cancels out Personal and Advertising Injury parts (d)-(g) insofar as they pertain to "Exhibitions and Related Marketing." (*See* doc. 21 at 16). And PESLIC's definition of "Exhibitions and Related Marketing"[4] is so far reaching that it swallows up any covered "advertisement."[5] This is important

---

[4] "Exhibitions and related marketing" means:

(a) The creation, production, publication, performance, exhibition, distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works and similar productions or work in any medium including videos, phonographic recordings, tapes, compact discs, DVDs, memory cards, electronic software or media, books, magazines, social media, webcasts and web sites.

(b) The conduct of individuals in shows, theatrical productions, concerts, sporting events, or any other form of exhibition.

(c) Merchandising, advertising or publicity programs or materials for the operations and materials described in (a) or (b) above.

(Doc. 1-2 at GL 21 96 10 16.).

[5] The '02 Policy defines "Advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products, or services for the purpose of attracting customers or supporters. For the purposes of this definition: (a) Notices that are published include material placed on the Internet or on similar electronic means of communication; and (b) Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement. (Doc. 1-3 at SECTION V – DEFINITIONS 1).

because offenses (d)-(g) comprise *all* of the advertising injuries that PESLIC purports to cover. So, by excluding offenses (d)-(g) insofar as they arise out of "exhibitions and related marketing", PESLIC essentially eliminates all advertising injury coverage in a move that is not condoned by Texas law. Notably, PESLIC describes no factual scenarios under which the '02 Policy would provide advertising injury coverage. Therefore, the Court declines to give effect to PESLIC's "Exhibitions and Related Marketing" exclusion.

As mentioned above, the Court finds that PESLIC has a duty to defend under the '01 Policy because the Model Lucy Pinder sufficiently alleged a violation of offense (f), "use of another's advertising idea in your 'advertisement.'" The same is true under Policy '02, where the remaining Models' allegations are the same as Lucy Pinder's and the Policy provides coverage for identical personal and advertising injuries. And since the '02 Policy's "Libel, Slander, Disparagement, Privacy Violation, and Advertising Injury" exclusion is inapplicable, the exclusion does not preclude PESLIC from having a duty to defend.

Therefore, the Court finds that PESLIC has a duty under the '02 Policy to defend the Clubs against the claims of Models Cora Skinner, Jaime Middleton, Jamillette Gaxiola, Jennifer Zharinova, Jessica Hinton, Lina Posada, Paoloa Canas, Sandra Valencia, Tiffany Toth, Gemma Farrell, Emily Sears, Jaclyn Swedberg, Maysa Quy, Cicelo Gibson, and Elizabeth Turner.

**b. Whether PESLIC had a duty to indemnify defendants under the terms of the '02 policy**

Here, where (1) the Court has already found that the Models' pleadings invoked PESLIC's duty to defend for offense (f), "the use of another's advertising idea in your 'advertisement'"; (2) the state court in the underlying lawsuit found that the Models were entitled to summary judgment on all their claims including the claims that established coverage under offense (f); and (3) the '02

Policy's "Libel, Slander, Disparagement, Privacy Violation, and Advertising Injury" exclusion is illusory and does not exclude offense (f), the Court now finds that PESLIC has a duty under Policy '02 to indemnify the Clubs for Lucy Pinder's claims.

## III. CONCLUSION

Therefore, the Court now **GRANTS** Insured Defendants and Interested Party Defendants' Motions for Summary Judgment, and **DENIES** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 12th day of August, 2022.

KEITH P. ELLISON

UNITED STATES DISTRICT JUDGE